Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 50212 | **DATE** | 2/4/2004 |
| **CASE TITLE** | LUDGATIS vs. UPS | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated on the reverse Memorandum Opinion and Order, defendant's motion for summary judgment is granted. This case is dismissed in its entirety with prejudice.

(11) ■ [For further detail see order on the reverse side of the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | FEB 06 200_ | 30 |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | 2-6-04 | |
| | | date mailed notice | |
| /SEC | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials |

# MEMORANDUM OPINION AND ORDER

Plaintiff, Thomas R. Ludgatis, brings this action against defendant, Local Union No. 710, International Brotherhood of Teamsters, his bargaining unit, claiming a breach of the duty of fair representation when plaintiff was terminated by his employer, United Parcel Service ("UPS") on October 29, 2001. Plaintiff was terminated for a physical and verbal altercation involving plaintiff and Randy Gallagher, a part-time supervisor for UPS. Jurisdiction is proper pursuant to 28 U.S.C. § 1337. Defendant moves for summary judgment.

To state a claim for breach of the duty of fair representation plaintiff "must establish that the union's action was arbitrary, discriminatory, or taken in bad faith." Konen v. International Bhd. of Teamsters, Local 200, 255 F.3d 402, 406-07 (7th Cir. 2001). Plaintiff argues the union's actions were arbitrary and in bad faith. Pl. Resp. Memo. p. 6. "[A]llegations of bad faith require an inquiry into the subjective motivation behind union action." McKelvin v. E.J. Brach Corp., 124 F.3d 864, 868 (7th Cir. 1997) (internal quotation marks omitted). Plaintiff has presented no evidence of motivation. He has not shown any conduct of union officials that would support a reasonable inference of bad faith. Konen, 255 F.3d at 408.

Plaintiff also argues defendant's actions were arbitrary in not obtaining evidence, particularly written statements, from co-workers who witnessed the events that resulted in his termination. Plaintiff supplies the statements of several co-workers as evidence that favorable witnesses were available but defendant failed to locate them. He testified in his deposition that defendant's business representative, Kathy Hade, told him that "they had everything. Kolthoff [one of defendant's stewards] told her exactly what happened, and I took it because in other cases there was always statements taken from people, so I thought they had their statements all situated between the two." (LR 56.1 (b), Ludagtis Dep. p. 29-30) He also contends defendant failed to keep him up to date on his discharge proceeding.

A union's actions in a member's grievance process are considered arbitrary only if the "actions are so far outside a wide range of reasonableness as to be irrational." Garcia v. Zenith Electronics Corp., 58 F.3d 1171, 1176 (7th Cir. 1995) (internal citation and quotation marks omitted). "The union must provide some minimal investigation of employee grievances, but the thoroughness of this investigation depends on the particular case, and only an egregious disregard for union members' rights constitutes a breach of the unions duty." Id. (internal citations and quotation marks omitted). "What is required to be shown goes considerably beyond the requirements of a malpractice suit" and plaintiff must establish that the outcome "would probably have been different but for the union's activities." Id. at 1176-77.

The evidence shows that Hade initiated an investigation of the incident by directing Kolthoff to talk with other employees to determine if there were witnesses that would be willing to provide a written statement in support of plaintiff. (LR 56.1 (a) ¶ 38) Koltoff reported back to Hade that he had spoken with a number of employees and none of them were willing to provide a written statement in support of plaintiff[1]. (Id. ¶ 39) At the local level hearing, UPS was unwilling to reverse its decision to terminate plaintiff and Hade referred the matter to the grievance committee for hearing. (Id. ¶ 47) Hade spoke with two rank-and-file employees identified by Gallagher as witnesses to the incident but they said they did not see the confrontation, so she concluded their statements would not help plaintiff. (Id. ¶ 51) At the grievance committee hearing Hade read plaintiff's grievance into the record and had plaintiff speak on his own behalf. (Id. ¶ 63) The committee members questioned both sides. (Id. ¶ 64) At the conclusion of the hearing, plaintiff stated he was satisfied with defendant's representation of him. (Id. ¶ 65) The grievance committee denied plaintiff's grievance. (Id. ¶ 67)

Plaintiff relies on the declarations of Russ Tanner, Brian Munson, Jamie Clark, David Coulter, and Cary Runkel, obtained by him after the grievance process was completed, to support his claim that witnesses favorable to his position were available but not found by defendant. Tanner's declaration states he observed the incident but did not hear every word. He saw plaintiff extend his finger but that Gallagher moved toward plaintiff. Plaintiff did not initiate the contact. Munson's declaration indicates he entered the scene during the altercation and did not see any physical contact between plaintiff and Gallagher. Clark's declaration reveals she was not a witness to the incident at all. Coulter's and Runkel's declarations merely indicate their own personal complaints about Gallagher. Gallagher stated at the local level hearing that plaintiff swore at him and struck him in the face or chest with his finger[2]. (LR 56.1 (a) ¶ 45) Plaintiff in his statement submitted with his grievance said, "I did point my finger at him, we then walked toward each other. Then he continued and walked right into my finger. Then claimed I touched him." (Id., Exh. D.2)

The evidence shows defendant provided "some minimal investigation" of plaintiff's grievance. See Garcia, 58 F.3d at 1176. Hade initiated an investigation, directed the steward to look for favorable witnesses, and interviewed purported witnesses disclosed by Gallagher. She made a judgment based on the information available to her that favorable witness statements were not available. While her investigation did not find Tanner (the one witness to the contact between plaintiff and Gallagher that supported plaintiff's version of the events), Hade "pursued a rational strategy with sufficient competence and vigor to meet the burden of some minimal investigation of employee grievances and showed no egregious disregard for union members' rights constituting a breach of the union's duty." Garcia, 58 F.3d at 1179 (internal quotation marks and citation omitted). Further, plaintiff has not established that if the declarants he offers had testified at either of the hearings the result would probably have been different. None of the declarants observed and heard the entire confrontation. It cannot be said that a different result would have been probable based on this evidence when the decisionmakers at the hearings had the statements of the participants in the altercation, the only persons privy to the entire event, and the opportunity to question them about it See id. at 1177.

As to the claim he was not kept updated on the status of his grievance, plaintiff has presented no authority that this is a basis for a finding the union acted arbitrarily. While the defendant could have kept plaintiff better informed, defendant's actions were not irrational and were not an egregious disregard of a union members rights. See id.

For the foregoing reason, defendant's motion for summary judgment is granted. This case is dismissed in its entirety with prejudice.

---

[1] Plaintiff objects to this paragraph of defendant's statement of facts claiming it is inadmissible hearsay because it is based on Hade's declaration in which she states what Kolthoff told her. While this statement is inadmissible hearsay as to the truth of what Koltoff said (that he spoke with a number of employees and none would give a statement for plaintiff) it is not hearsay and is admissible for the purpose of showing what information Hade had available to her in determining what course of action to take on the grievance.

[2] Plaintiff objects to this paragraph of defendant's statement of facts claiming it is inadmissible hearsay because it is based on Hade's declaration in which she recounts what Gallagher said at the hearing. However, the statement is not hearsay for the purpose offered. It is not offered for the purpose of establishing the truth of what Gallagher said (that plaintiff swore at and struck him) but rather to establish what was said at the hearing which was something Hade personally heard while in attendance at the hearing. See Fed. R. Evid. 801 (c).